UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

AMY MEYERS,

                             Plaintiff,

             - against -

MEDCO HEALTH SOLUTIONS, INC.,

                           Defendant.

------------------------------------------------------- x

Hon. Richard J. Holwell, U.S.D.J.
Hon. Theodore H. Katz, U.S.M.J.

Index No. 09-CV-9216

**SECOND AMENDED COMPLAINT**
**WITH JURY DEMAND**

Plaintiff, Amy Meyers, by her attorneys, Liddle & Robinson, L.L.P., for her

Second Amended Complaint alleges as follows:

<u>NATURE OF THE ACTION</u>

1.      This is a civil action for damages and remedies for discrimination and

retaliation against Ms. Meyers based on her sex brought under (1) the New Jersey Law Against

Discrimination, (2) the New York City Human Rights Law; and (3) under Title VII of the Civil

Rights Act of 1964, as amended ("Title VII").

<u>THE PARTIES</u>

2.      Meyers resides at 33 Riverside Drive, Apt. 3-E, New York, New York,

10023. Meyers worked at Medco Health Solutions, Inc. ("Medco") from April 2004 through

January 8, 2009, when her employment was terminated.

3.      Medco is one of the largest pharmaceutical benefits managers in the country

with its principle place of business located at 100 Parsons Pond Drive, Franklin Lakes, New Jersey

07417.

RECEIVED
AUG 02 2010
U.S.D.C. S.D. N.Y.
CASHIERS

## JURISDICTION AND VENUE

4.        This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question), 1332 (diversity jurisdiction), and 1367 (supplemental jurisdiction).  The amount in controversy exceeds $75,000.

5.        Venue is proper in this district under 28 U.S.C. §§ 1391(a) and (c) because defendant is subject to personal jurisdiction in this district.

## FACTS

6.        Meyers is a female who worked for Medco from April 2004 through January 9, 2009.

7.        Meyers began her career at Medco in the position of Director of Business Development.  In late 2004 or early 2005, she was promoted to Senior Director.

8.        In 2007, Meyers was transferred to the position of Senior Director, Strategy and Market Development, Knowledge Solutions.  In this position, Meyers reported to Inderpal Bhandari, a Vice President in this group.  Mr. Bhandari reported to Dr. Glen Stettin, who reported to Kenny Klepper, the President of Medco.  No women had managerial responsibilities over Meyers.  Medco has few senior female employees.  During the time Meyers worked for Medco, a woman has never been promoted to a level-3 Vice President or higher under Dr. Stettin.

9.        While Meyers reported to Mr. Bhandari, she worked from her home in New York, New York on average no less than one day per week.  Medco was aware that she worked from her home in New York, New York in addition to the office in New Jersey.

10.        Mr. Bhandari discriminated against Meyers because of her gender.  He treated Meyers differently than he treated the men who reported to him.  Meyers was the only

2

woman who reported directly to Mr. Bhandari. He cut her off when she spoke at meetings, which created the appearance to colleagues that she was not qualified for her job. He did not invite her to meetings that, given her position, she should have attended. Meyers' colleagues (including multiple Vice Presidents) noticed that Mr. Bhandari treated her worse than her male colleagues.

11.     In or around May 2007, Mr. Bhandari met with Larry Posner, a potential new hire, who was not more experienced or qualified than Meyers. Mr. Bhandari told Meyers and Mr. Posner that he (Bhandari) wanted to hired Mr. Posner but could not because of head count and budget issues.

12.     In October 2007, Meyers informed Tara Wolkenhauer, Medco's Human Resources representative, that she believed Mr. Bhandari treated her worse than her male colleagues and that such treatment was not fair. Meyers also told Human Resources that she was concerned Mr. Bhandari and Medco would retaliate against her for making this claim to Human Resources.

13.     On October 17, 2007 – days after Meyers reported Mr. Bhandari's conduct to Human Resources – Mr. Bhandari told Meyers at a mid-year performance review that there was not room for both of them in the group and therefore Meyers had to look for other opportunities. It was unclear at this meeting if Mr. Bhandari had terminated Meyers' employment.

14.     Over the course of the next week, Mr. Bhandari made it clear that Meyers could not continue to work in her current position, and he instructed her to speak with other people at Medco to determine if there was another position at Medco she could fill.

3

15.     During that week, Meyers placed several calls to Wolkenhauer expressing her concern that shortly after she told Human Resources she believed Mr. Bhandari treated her unfairly, Mr. Bhandari forced her out of her position.

16.     On October 25, 2007, Mr. Bhandari called Meyers into her office at approximately 6:00 PM.  He told her that he no longer had a job for Meyers in his group.  He said that he wanted someone with a different skill set.  Mr. Bhandari said that Dr. Stettin agreed with his decision to remove Meyers from the group.

17.     At around this same time, Medco offered Mr. Posner a position reporting to Bhandari, where he would have performed many of Meyers' duties.  When Posner did not accept this offer, Bhandari began performing most of Meyers' duties.  Thus, by removing Meyers from her position, Bhandari was able to offer Mr. Posner a position, which he had wanted to do since in or around May.

18.     On October 26, 2007, McDermott informed Meyers that she would no longer report to Mr. Bhandari because it was inappropriate for her to work for him after he had clearly stated that he did not want her in his group.  McDermott told Meyers that she should report to her desk on Monday and wait for further direction.

19.     Later that same day, Dr. Stettin told Meyers that she would be reporting to Lucille Accetta, who was at Meyers' same level – a Senior Director – starting on Monday, October 29 because Ms. Accetta "needed help."  Ms Accetta reported to Chris Bradbury, Vice President of Care Enhancing Solutions, who was at the same level as Mr. Bhandari.  No one at Medco explained to Meyers what her actual role would be reporting to Ms. Accetta.

20.     Subsequently, Meyers began reporting to Ms. Accetta.  However, Medco did not give Meyers a title and it was apparent that there was not actually a position available for

4

someone at Meyers' level. After several months, Meyers created her own title: Senior Director, Strategy and Market Development for Care Enhancing Solutions.

21.     While Meyers reported to Ms. Accetta, she worked from her home in New York, New York on average no less than two day per week. Medco was aware that she worked from her home in New York, New York in addition to the office in New Jersey. In fact, Medco requested that Meyers work from her home at least two days a week because Meyers shared a desk/office with a colleague, and Medco did not have a place in its New Jersey office for Meyers to work on a full-time basis in her new role.

22.     Meyers performed in this role until January 8, 2009, at which time Medco told Meyers that her position was being eliminated.

23.     In 2007 and 2008, Meyers was a key witness in a multi-million dollar lawsuit brought by IMS Health, Inc. Meyers spent close to two months working with Medco's lawyers to help defend this action, including background, depositions, and direct testimony. By late 2008, Meyers had completed her role in this lawsuit. In 2009, the parties reached a settlement.

24.     Accordingly, upon information and belief, Medco retained Meyers in October 2007 – when Mr. Bhandari forced her out of his group and there was not an actual position for her to fill – because it wanted her continued assistance in the lawsuit.

25.     Medco's stated reason for terminating Meyers in January 2009 was a pretext for discrimination and retaliation.

26.     After Medco terminated Meyers' employment, it continued to treat her unfairly. Initially, Medco refused to let Meyers access her personal and professional contacts and her calendar and in fact Medco deleted all phone numbers and call history from Meyers'

personal phone, and refused to provide these numbers for over two months. Medco's conduct impaired Meyers' ability to mitigate her damages because she could not contact people to begin looking for a new job.

27.     Medco further retaliated against Meyers after she filed her EEOC Charge of Discrimination. On March 5, 2009, Medco paid Meyers her 2008 bonus in the amount of $40,000, which was the date Medco paid its 2008 bonuses.

28.     Subsequently, Medco learned that Meyers had filed her Charge of Discrimination with the EEOC.

29.     After learning this, on March 26, 2009, Medco sent Meyers a letter claiming, without any legitimate basis, that its payment of her 2008 bonus was an "error."

30.     Medco's payment of Meyer's 2008 bonus was not an error, and Medco's claim that it was, and attempt to force Meyers to repay the bonus, is further retaliation.

### FIRST CLAIM
(Gender Discrimination Under the NJLAD )

31.     Meyers repeats and realleges the allegations contained in paragraphs 1 through 30, as if separately set forth herein.

32.     By its actions set forth above, Medco unlawfully discriminated against Meyers on the basis of her gender age in violation of the NJLAD.

33.     As a result of Medco's discrimination, Meyers has suffered substantial damages, including but not limited to lost wages and benefits, in an amount to be determined at trial. Meyers also seeks punitive damages.

**SECOND CLAIM**
(Retaliation under the NJLAD)

34.     Meyers repeats and realleges the allegations contained in paragraphs 1 through 33, as if separately set forth herein.

35.     Meyers opposed Medco's unlawful, discriminatory employment practices and engaged in protected activity under the NJLAD by asserting that she was being discriminated against on the basis of her gender in oral complaints she made to Medco.

36.     Medco retaliated against Meyers for having engaged in the protected activity described in the preceding paragraph by terminating her employment.

37.     Medco further retaliated against Meyers after she submitted a Charge of Discrimination to the EEOC alleging that Medco discriminated against her on the basis of her gender.

38.     Medco informed Meyers, without any legitimate basis, that its payment of her 2008 bonus was an "error" and demanded repayment of the bonus.

39.     As a result of Medco's retaliation, Meyers has suffered substantial damages, including but not limited to mental distress and lost wages and benefits and punitive damages, in an amount to be determined at trial. Meyers also seeks punitive damages.

**THIRD CLAIM**
(Gender Discrimination Under the New York State Human Rights Law)

40.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 39, as if separately set forth herein.

41.     The provisions of the New York State Human Rights Law apply to acts committed outside the state of New York against a resident of New York if such acts would constitute an unlawful discriminatory practice if committed within New York. § 198-a(1).

42.     During the relevant time periods, Plaintiff performed a portion of her work for Medco from her home in New York, New York.

43.     By its actions detailed above, Defendant has unlawfully discriminated against Plaintiff on the basis of her sex in violation of § 296 of the New York State Human Rights Law.

44.     As a result of Defendant's discrimination, Plaintiff has suffered substantial damages, including but not limited to lost wages and benefits, in an amount to be determined at trial.

## FOURTH CLAIM
(Retaliation Under the New York State Human Rights Law)

45.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 44, as if separately set forth herein.

46.     Meyers opposed Medco's unlawful, discriminatory employment practices and engaged in protected activity under the New York State Human Rights Law by asserting that she was being discriminated against on the basis of her gender in oral complaints she made to Medco.

47.     Medco retaliated against Meyers for having engaged in the protected activity described in the preceding paragraph by terminating her employment.

48.     Medco further retaliated against Meyers after she submitted a Charge of Discrimination to the EEOC alleging that Medco discriminated against her on the basis of her gender.

49.     Medco informed Meyers, without any legitimate basis, that its payment of her 2008 bonus was an "error" and demanded repayment of the bonus.

8

50.     Defendant's actions constitute retaliation against Plaintiff in violation of the New York State Human Rights Law, § 296.

51.     As a result of Defendant's retaliation, Plaintiff has suffered substantial damages, including but not limited to lost wages and benefits, in an amount to be determined at trial.

## FIFTH CLAIM
### (Gender Discrimination Under Title VII)

52.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 51, as if separately set forth herein.

53.     On May 3, 2010, the EEOC issues Plaintiff a Notice of Suit Rights.

54.     By its actions detailed above, Defendant has unlawfully discriminated against Plaintiff on the basis of her sex in violation of Title VII, including by reassigning her to a lesser position, requiring that she work from home two days per week, and terminating her employment.

55.     As a result of Defendant's discrimination, Plaintiff has suffered substantial damages, including but not limited to lost wages and benefits, in an amount to be determined at trial.

## SIXTH CLAIM
### (Retaliation Under Title VII)

56.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 57, as if separately set forth herein.

57.     Meyers opposed Medco's unlawful, discriminatory employment practices and engaged in protected activity under the Title VII by asserting that she was being discriminated against on the basis of her gender in oral complaints she made to Medco.

58.     Medco retaliated against Meyers for having engaged in the protected activity described in the preceding paragraph by reassigning her to a lesser position, requiring that she work from home two days per week, and terminating her employment.

59.     Medco further retaliated against Meyers after she submitted a Charge of Discrimination to the EEOC alleging that Medco discriminated against her on the basis of her gender.

60.     Medco informed Meyers, without any legitimate basis, that its payment of her 2008 bonus was an "error" and demanded repayment of the bonus.

61.     Defendant's actions constitute retaliation against Plaintiff in violation of Title VII.

62.     As a result of Defendant's retaliation, Plaintiff has suffered substantial damages, including but not limited to lost wages and benefits, in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A.  On the First Claim (Discrimination Under the NJLAD), back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

B.      On the Second Claim (Retaliation Under the NJLAD), back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

C.      On the Third Claim (Discrimination Under the New York State Human Rights Law), back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

D.      On the Fourth Claim (Retaliation Under the New York State Human Rights Law), back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

E.      On the Fifth Claim (Discrimination Under Title VII), back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

F.      On the Sixth Claim (Retaliation Under Title VII), back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial; and

G.      Such other and further relief as the Court deems appropriate under the circumstances.

Dated: New York, New York
       July 30, 2010

                                   LIDDLE & ROBINSON, L.L.P.

                                   By: _____
                                        David Marek (DM 2083)
                                   Attorneys for Plaintiff
                                   800 Third Avenue
                                   New York, New York 10022
                                   (212) 687-8500

11