UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_3-31-15_
```

```
                                    :
AMY MEYERS,                         :
                                    :
                Plaintiff,          :
                                    :          Before: Richard K. Eaton, Judge*
                                    :
        v.                          :
                                    :          Court No. 09 Civ. 09216 (RKE)
MEDCO HEALTH SOLUTIONS, INC.,       :
                                    :
                Defendant.          :
                                    :
```

## OPINION and ORDER

Before the court is plaintiff Amy Meyers's ("plaintiff" or "Meyers") motion for

reconsideration pursuant to Local Civil Rule 6.3. Meyers seeks reconsideration of the court's

October 4, 2012 Opinion and Order to the extent that it dismissed her retaliation claims against

her former employer, Medco Health Solutions, Inc. ("defendant" or "Medco"), in Counts Two,

Four, and Six[1] of the Third Amended Complaint and asks the court to reinstate those claims. *See*

Pl.'s Notice of Mot. for Recons. (ECF Dkt. No. 66); Pl.'s Mem. of Law in Supp. of Her Mot. for

Recons. 2–3, 15 (ECF Dkt. No. 68) ("Pl.'s Br."). In the alternative, Meyers asks the court to

enter final judgment with respect to all of her claims, which were dismissed at summary

judgment, and stay any further proceedings so that she may immediately appeal. *See* Pl.'s Br. 3,

15.

---

[*]     Judge Richard K. Eaton, of the United States Court of International Trade, sitting
by designation.

[1]     Plaintiff has divided the Third Amended Complaint into "claims." *See* Third Am.
Compl. (ECF Dkt. No. 34-1). Because several sections of the Third Amended Complaint contain
multiple claims, however, the court hereinafter refers to plaintiff's "First Claim" as "Count One,"
her "Second Claim" as "Count Two," and so forth.

For the reasons set forth below, plaintiff's motion for reconsideration is granted, in part.

On reconsideration, defendant's motion for summary judgment is denied, in part, and plaintiff's

claims for retaliation in Counts Two and Six of the Third Amended Complaint are reinstated.[2]


## BACKGROUND[3]

On January 8, 2009, defendant mailed Meyers a severance package, which included,

among other things, a letter terminating plaintiff's employment, a "Release of Claims" form, and

a "Summary Plan Description" for Medco's Severance Plan (the "Severance Plan"). *See* Letter

from Medco to Meyers (Jan. 8, 2009), Certification of John K. Bennett, Ex. E, D-0045 (ECF

Dkt. No 38-5) ("Termination Letter"). The Termination Letter provided, in relevant part:

> You are eligible for certain pay and benefits under the [Severance] Plan. Under the
> terms of the Plan, you will receive severance pay and benefits for a period of 20
> weeks . . . and outplacement benefits for 6 months. *In addition*, you will receive a
> discretionary bonus of $40,000.00 for performance year 2008. All payments are
> subject to applicable withholding. *In order to receive severance pay and benefits*
> *under the Plan you must sign and return the enclosed Release of Claims.* Your
> *severance payments* will not commence until after the 7 day revocation period for
> the Release of Claims has expired and the Release of Claims has become effective.
> *The bonus amount will be paid in a lump sum [as] soon as practicable following*
> *the effective date of the Release of Claims.*

Termination Letter at D-0045 (emphasis added). Under the terms of the Severance Plan,

"Severance Pay" is "determined by pay, grade level and years of Continuous Service" and is

---

[2]      Because her retaliation claims in Counts Two and Six are reinstated, the court
does not address plaintiff's alternative motion for entry of final judgment with respect to the
dismissed claims.

[3]      The court presumes the reader's familiarity with the majority of the background
facts of this case, which were described at some length in the court's Opinion and Order, dated
October 4, 2012. *See Meyers v. Medco Health Solutions, Inc.*, No. 09 Civ. 09216, 2012 WL
4747173, at *1–6 (S.D.N.Y. Oct. 4, 2012).

based on "Annual [C]ompensation," which "exclud[es] amounts such as bonuses."[4] *See* Medco

Severance Plan Summary Plan Description, Attachment C to Termination Letter, Certification of

John K. Bennett, Ex. E, D-0053, D-0062, D-0069, D-0071 (ECF Dkt. No 38-5) ("Summary Plan

Description").

On February 25, 2009, following her termination by defendant and receipt of the

severance package, plaintiff filed an Equal Employment Opportunity Commission ("EEOC")

Charge of Discrimination, claiming that her termination had been either an act of gender

discrimination or in retaliation to her complaints of gender discrimination.[5]  Thereafter, on

March 6, 2009, Meyers received a bonus from Medco in the amount of $21,756.96.[6]

---

[4]      Pursuant to the Summary Plan Description, "Severance Pay" is determined
according to the provided schedule, which includes examples of "Severance Pay" in terms of
"Weeks of Pay." *See* Medco Severance Plan Summary Plan Description, Attachment C to
Termination Letter, Certification of John K. Bennett, Ex. E, D-0053, D-0062 (ECF Dkt. No 38-
5) ("Summary Plan Description").  "Week of Pay" is defined in the Summary Plan Description's
Glossary section as "Annual Compensation divided by 52," while "Annual [C]ompensation" is
defined as

> [t]he employee's annualized base salary in effect as of the date the Covered
> Employee incurs a Separation From Service, without reduction for any pre-tax
> contributions to Company-sponsored benefit plans, but *excluding amounts such as
> bonuses*, commissions, overtime pay, shift pay, premium pay, cost of living
> allowances, income from stock option exercises, stock grants of any type, or other
> extra pay.

Summary Plan Description at D-0069, D-0071 (emphasis added).  "Outplacement Benefits" are
defined as "[b]enefits for outplacement counseling or other outplacement services" and
"Severance Benefits" are defined as "medical, dental, prescription drug and basic life insurance
coverage during the Severance Pay Period." *See* Summary Plan Description at D-0062, D-0063.
Based on the Summary Plan Description, it appears that bonuses are not covered by the
Severance Plan as severance pay, outplacement benefits, or severance benefits.

[5]      On or about February 18, 2009, prior to filing the EEOC charge, plaintiff's
attorney sent a proposed EEOC charge and a letter to defendant's in-house counsel indicating
that the proposed EEOC charge would be filed on February 23, 2009. Def.'s Local Rule 56.1
Stmt. ¶ 104 (ECF Dkt. No. 43).

[6]      Medco alleges that the $21,756.96 received by plaintiff is the "discretionary
bonus of $40,000 for performance year 2008" mentioned in the Termination Letter after taxes

Subsequently, on March 26, 2009, Medco demanded return of the bonus, claiming that it had been paid erroneously and should not have been dispersed until Meyers had signed a waiver and release of claims pursuant to her severance package. *See* Def.'s Local Rule 56.1 Stmt. ¶¶ 107–108 (ECF Dkt. No. 43) ("Def.'s 56.1 Stmt."); Dep. of Tara Wolckenhauer, Certification of John K. Bennett, Ex. D, 246:13–247:9 (ECF Dkt. No. 38-5).

Plaintiff brought an action against Medco in this Court on November 5, 2009, alleging gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New Jersey Law Against Discrimination ("NJLAD"), and the New York State Human Rights Law ("NYSHRL").[7] Defendant counterclaimed for unjust enrichment, seeking the return of the $21,756.96 bonus, which Medco maintains was mistakenly paid to Meyers,[8] because it

---

were withheld. *See* Def.'s Rule 56.1 Stmt. ¶ 107 (ECF Dkt. No. 43) ("On March 6, 2009, Medco erroneously paid [p]laintiff $21,756.96, the net after-tax amount of the $40,000.00 discretionary bonus identified in the [T]ermination [L]etter." (citations omitted)); *see also* Termination Letter at D-0045.

[7]     Meyer's Third Amended Complaint has nine counts; although, her initial complaint had only four. Counts One and Two allege violations of the NJLAD, while Counts Three and Four allege violations of the NYSHRL. Compl. 6, 7, 8 (ECF Dkt. No. 1); Third Am. Compl. 7, 8, 9 (ECF Dkt. No. 34-1). Counts Five and Six, alleging violations of Title VII, were added in plaintiff's Second Amended Complaint. *See* Second Am. Compl. 9 (ECF Dkt. No. 24); Third Am. Compl. 10, 11. In Counts One, Three, and Five, Meyers claims that Medco unlawfully discriminated against her on the basis of her gender in violation of the NJLAD, the NYSHRL, and Title VII, respectively. In Counts Two, Four, and Six, which are at issue here, Meyers claims that Medco retaliated against her for engaging in protected activity when it (1) terminated her employment and (2) "informed Meyers, without any legitimate basis, that its payment of her 2008 bonus was an 'error' and demanded repayment of the bonus." Third Am. Compl. 8, 9–10, 11. Counts Seven, Eight, and Nine were added in the Third Amended Complaint and allege retaliation under the NJLAD, the NYSHRL, and Title VII on the part of Medco by its failure to rehire plaintiff after the initiation of this case. *See* Third Am. Compl. 11, 12, 14.

[8]     According to Medco, retention of the bonus was contingent upon Meyers executing a release of future claims, which she did not sign. *See* Br. in Supp. of Def.'s Mot. for Summ. J. 2 (ECF Dkt. No. 42).

was part of the severance pay to which plaintiff was not entitled unless and until she signed the Release of Claims. Answer and Countercl. 7–8 (ECF Dkt. No. 4).

Defendant moved for summary judgment on its counterclaim for unjust enrichment based on retention of the bonus as well as all claims in plaintiff's Third Amended Complaint. *See* Br. in Supp. of Def.'s Mot. for Summ. J. 1 (ECF Dkt. No. 42) ("Def.'s Summ. J. Br."). On October 4, 2012, the court granted defendant's summary judgment motion with respect to plaintiff's discrimination and termination claims, dismissing Counts One through Nine of the Third Amended Complaint, but denied Medco's motion with respect to its counterclaim for unjust enrichment, which is set to proceed to trial. *Meyers v. Medco Health Solutions, Inc.*, No. 09 Civ. 09216, 2012 WL 4747173, at *16 (S.D.N.Y. Oct. 4, 2012) ("*Meyers I*"). In denying Medco's motion for summary judgment with respect to its counterclaim for unjust enrichment, the court reasoned that "there [was] a genuine dispute of material fact as to whether payment of the bonus could have been or was conditioned upon execution of the Release of Claims and, if so, whether that condition was lawful." *Id.*

Plaintiff has now made the motion before the court, seeking reconsideration of those portions of the court's October 4, 2012 Opinion and Order that granted summary judgment to defendant on plaintiff's retaliation claims in Counts Two, Four, and Six of the Third Amended Complaint and requesting that the court reinstate those claims. Pl.'s Notice of Mot. for Recons.; Pl.'s Br. 2–3, 15.

**LEGAL FRAMEWORK**

### I.   MOTION FOR RECONSIDERATION

"The standards governing motions to alter or amend judgment pursuant to [Federal Rule of Civil Procedure] 59(e) and motions for reconsideration or reargument pursuant to Local [Civil] Rule 6.3 are the same." *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375 (S.D.N.Y. 2007) (citing *4200 Ave. K LLC v. Fishman*, No. 00 Civ. 8814 (RLC), 2001 WL 498402, at *1 (S.D.N.Y. May 10, 2001)). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). Nonetheless, "[t]he decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *SEC v. Neto*, 27 F. Supp. 3d 434, 439 (S.D.N.Y. 2014) (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 n.6 (S.D.N.Y. 2011)) (internal quotation marks omitted).

### II.   SUMMARY JUDGMENT

A party is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On a motion for summary judgment, a fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute is 'genuine'" in this context "if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (quoting *Anderson*, 477 U.S. at 248).

6

In deciding a motion for summary judgment, a court must "construe the evidence in the light most favorable to the nonmoving party and draw all inferences and resolve all ambiguities in [that party's] favor." *See Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)) (internal quotation marks omitted). The issue is "not whether . . . the evidence unmistakably favors one[] side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (alteration in original) (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Id.* (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)) (internal quotation marks omitted).

## III.   PLAINTIFF'S RETALIATION CLAIMS

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The NJLAD similarly "makes it illegal '[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under [the NJLAD].'" *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 619 (N.J. 2013) (alteration in original) (quoting N.J. Stat. Ann. § 10:5-12(d)). Under both Title VII and the NJLAD, plaintiff's retaliation claims are governed by the three-step burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jute v. Hamilton*

7

*Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) ("Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis." (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998))); *Battaglia*, 70 A.3d at 619 ("All [NJLAD] claims are evaluated in accordance with the United States Supreme Court's burden-shifting mechanism." (citing *McDonnell Douglas*, 411 U.S. at 802–04; *Andersen v. Exxon Co.*, 446 A.2d 486, 490–91 (N.J. 1982))).

Under the *McDonnell Douglas* framework, a plaintiff first bears the initial burden of establishing a prima facie case of discriminatory retaliation by showing that (1) she participated in a protected activity; (2) her participation in the protected activity was known to the defendant; (3) she was subject to an adverse employment action; and (4) there was "a causal connection between the protected activity and the adverse employment action." *Jute*, 420 F.3d at 173 (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 282–83 (2d Cir. 2001)) (internal quotation marks omitted); *Battaglia*, 70 A.3d at 619 (citing *Woods–Pirozzi v. Nabisco Foods*, 675 A.2d 684, 695 (N.J. Super. Ct. App. Div. 1996)). Second, once the plaintiff meets this burden and establishes a prima facie case, there is a presumption of retaliation and the burden shifts to the defendant "to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Jute*, 420 F.3d at 173 (citing *Quinn*, 159 F.3d at 768). Finally, under the third step, if the defendant has offered a legitimate, non-retaliatory reason for the adverse employment action, the presumption of retaliation "drops from the picture" and the burden shifts back to the plaintiff, who must then produce evidence that the non-retaliatory reason provided by the defendant "is a mere pretext for retaliation." *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). Moreover,

> [t]he Supreme Court recently held that a plaintiff alleging retaliation in
> violation of Title VII[9] must show that retaliation was a "but-for" cause of the
> adverse action, and not simply a "substantial" or "motivating" factor in the
> employer's decision. However, "but-for" causation does not require proof that
> retaliation was the only cause of the employer's action, but only that the adverse
> action would not have occurred in the absence of the retaliatory motive.

*Id.* at 845–46 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2526, 2533

(2013)). The Second Circuit has since explained that

> [p]rior to the Supreme Court's decision in *Nassar*, in order to demonstrate
> pretext, a plaintiff was only required to demonstrate that a retaliatory motive was
> "a substantial or motivating factor . . . ." However, a plaintiff's injury can have
> multiple "but-for" causes, each one of which may be sufficient to support liability.

*Id.* at 846 n.5 (quoting *Raniola v. Bratton*, 243 F.3d 610, 628 (2d Cir. 2001)).

In *Zann Kwan*, for example, the parties "put forward several alleged causes of the

plaintiff's termination," including "retaliation, unsuitability of skills, poor performance,

and inappropriate behavior." *Id.* The Court noted that "[t]he determination of whether

retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly

suited to disposition by summary judgment, because it requires weighing of the disputed

facts, rather than a determination that there is no genuine dispute as to any material fact."

*Id.* It then further explained that "[a] jury should eventually determine whether the

plaintiff has proved by a preponderance of the evidence that she did in fact complain

about discrimination and that she would not have been terminated if she had not

complained about discrimination." *Id.*

---

9       The but-for test has been cited to in the context of a retaliation claim under the
NJLAD and "New Jersey courts 'have frequently looked to case law under Title VII . . . for
guidance in developing standards to govern the resolution of [NJLAD] claims.'" *See Bell v.
Lockheed Martin Corp.*, Civil No. 08–6292 (RBK/AMD), 2014 WL 2920503, at *5, *7 (D.N.J.
June 27, 2014) (quoting *Carmona v. Resorts Int'l Hotel, Inc.*, 915 A.2d 518, 528 (N.J. 2007))
(citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)).

To show that an employer's explanation is a pretext for retaliation, an "employee's admissible evidence must show 'that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (quoting *Zann Kwan*, 737 F.3d at 845). Summary judgment should be denied an employer where "[t]he record contains enough evidence that, if credited, could support a jury's finding that [the employer's] rationale for [the employee's] treatment and eventual termination was a pretext for illegal . . . retaliation." *Id.* For example,

> [a] plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.

*Zann Kwan*, 737 F.3d at 846 (citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105–07 (2d Cir. 2001); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000); *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 156–57 (2d Cir. 1998); *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994)). When a plaintiff proffers evidence that could, if believed, support a finding of pretext, "[a] jury might credit all of [the] proffered evidence, some of it, or none at all. But that is 'left for the jury to decide at trial.'" *See Kirkland*, 760 F.3d at 227 (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 21 (2d Cir. 2012)).

## DISCUSSION

### I.  PLAINTIFF'S RETALIATION CLAIMS UNDER THE NYSHRL

As an initial matter, plaintiff's effort to revive its argument that the NYSHRL[10] applies to her claims is no more than an attempt to "relitigate an issue already decided." *See Shrader*, 70

---

[10]    The NYSHRL makes it unlawful for an employer to discriminate against an individual "in terms, conditions or privileges of employment" on the basis of sex. N.Y. Exec.

F.3d at 257. Thus, reconsideration as to the court's dismissal of Count Four[11] of plaintiff's Third Amended Complaint is denied. *See id.* ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."). The facts that plaintiff points to—plaintiff's working from home in New York two to three days a week and sharing a desk when working in New Jersey—were expressly noted, considered, and found to be insufficient as a matter of law to establish the applicability of the NYSHRL by the court in *Meyers I. See Meyers I*, 2012 WL 4747173, at *2, *4–5. Accordingly, the motion for reconsideration is denied with respect to Count Four.

## II.   OTHER ACTS OF RETALIATION AS EVIDENCE THAT DEFENDANT'S PROFFERED REASON FOR PLAINTIFF'S TERMINATION WAS PRETEXTUAL

In *Meyers I*, the court granted summary judgment to the defendant with respect to Counts Two and Six[12] of the Third Amended Complaint (those dealing with plaintiff's retaliation claims based on Medco's termination of her employment and demand for the return of her bonus)

---

Law § 296(1)(a) (McKinney). It further prohibits "retaliat[ion] or discriminat[ion] against any person because he or she has opposed any practices forbidden under [the NYSHRL] or because he or she has filed a complaint, testified or assisted in any proceeding under [the NYSHRL]." N.Y. Exec. Law § 296(7) (McKinney). "[R]etaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (citing *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714–15 (2d Cir. 1996)). Thus, "[t]he burden-shifting framework laid out in *McDonnell Douglas*" that applies to Title VII retaliation claims also "governs retaliation claims under . . . the NYSHRL." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (citing *Schiano*, 445 F.3d at 609).

[11]     Plaintiff does not ask the court to reconsider Counts Three and Eight, but the court notes that reconsideration as to those counts would be denied for the same reasons it is denied as to Count Four.

[12]     Counts Two and Six of the Third Amended Complaint allege retaliation under the NJLAD and Title VII, respectively. Third Am. Compl. 8, 11.

"because defendant ha[d] demonstrated a legitimate, non-discriminatory basis for plaintiff's termination, and there [was] no evidence on the record sufficient to raise a genuine factual dispute as to whether defendant's proffered reason for her termination was pretextual." *Meyers I*, 2012 WL 4747173, at *13.

At summary judgment, as its legitimate reason for plaintiff's termination, defendant argued that Meyers's "position was lawfully eliminated in an economic downsizing." Def.'s Summ. J. Br. 24. Testimony from Glen Stettin ("Stettin"), a supervisor at Medco, indicated that Medco decided to eliminate positions in the division that included Lucille Accetta's ("Accetta") group, of which Meyers was a member at the time she was terminated, because its "expenses were over the budget." *See Meyers I*, 2012 WL 4747173, at *10 (quoting Dep. of Stettin, Certification of John K. Bennett, Ex. H, 173:4–173:11 (ECF Dkt. No. 38-6) ("Stettin Dep.")). According to Stettin, "the recommendation to eliminate [plaintiff's] position, as well as other actions in the department, were part of [a] proposal" from that division containing "recommendations about meeting their budget for the coming year." *See* Stettin Dep. 173:4– 173:11. Testimony from Christopher Bradbury ("Bradbury"), Vice President of the division that included Accetta's group, explained that he had identified Meyers and two other individuals in response to Stettin's request and that he chose Meyers because "[m]any of the deliverables were completed, and the remaining work, there were good options on where to integrate that with other individuals." *See* Dep. of Bradbury, Certification of John K. Bennett, Ex. L, 111:24–112:3 (ECF Dkt. No. 38-7). In addition, Accetta testified, and Meyers confirmed in her deposition testimony, that plaintiff felt she was overqualified for the work she was performing in Accetta's group. *See* Dep. of Accetta, Certification of John K. Bennett, Ex. K, 66:19–67:17 (ECF Dkt. No. 38-7) ("Accetta Dep."); Dep. of Meyers, Certification of John K. Bennett, Ex. B, 247:4–247:7

(ECF Dkt. No. 38-3) ("Meyers Dep."). Based on record evidence, the court found that "defendant ha[d] met its burden of articulating a legitimate, non-discriminatory reason for terminating Meyers insofar as it establishe[d] that [plaintiff's] dismissal was part of [a] larger cost-cutting plan, which included the termination of additional employees." *Meyers I*, 2012 WL 4747173, at *11 (citing *Montanile v. Nat'l Broad. Co.*, 211 F. Supp. 2d 481, 487 (S.D.N.Y. 2002)).

With regard to pretext, the court considered plaintiff's arguments and found that (1) the mere fact of Medco's business growth did not "render[] the decision to reduce costs pretextual;" (2) "plaintiff's contention that she alone was fired [was] factually inaccurate and insufficient to meet her burden of demonstrating a triable issue of fact concerning" pretext; and (3) plaintiff's claim that she must have been fired out of retaliation because "she was uniquely qualified to help [Medco] at the time of her termination . . . amount[ed] to little more than her personal opinion of her qualifications" and thus, it was "insufficient to demonstrate that no reasonable person could have chosen to dismiss her over the other employees who were not subject to the layoffs." *See id.* at *12, *13.

Plaintiff now argues that the court's opinion in *Meyers I* overlooked three acts against Meyers as part of its pretext analysis. In particular, plaintiff states that the court did not consider (1) the timing of plaintiff's removal from Inderpal Bhandari's ("Bhandari") group, (2) that at the instruction of Stettin, Bhandari's superior, Bhandari "wrote . . . and circulated . . . a false, negative review of [p]laintiff" indicating "[d]efendant's intent to terminate [p]laintiff's employment," and (3) Medco's demand for the return of plaintiff's bonus. Pl.'s Br. 5, 8, 9.

According to plaintiff, these three acts by Medco constitute evidence that Medco's proffered reason for termination—a larger cost-cutting plan—was a pretext.[13]  *See* Pl.'s Br. 5.

As an initial matter, it is worth noting that the court did not overlook plaintiff's arguments with respect to these three claimed acts.  Rather, plaintiff's counsel never made the argument that they were evidence of pretext.[14]  As a result, in the normal situation, plaintiff

---

[13]     While plaintiff also argues that the demand for return of the bonus "was itself an actionable claim alleged by [p]laintiff against [d]efendant," this argument is addressed separately later in this opinion. Pl.'s Br. 8.

[14]     The entire pretext argument made by Meyers's attorney in his summary judgment brief, with respect to plaintiff's retaliation claims based on Medco's termination of her employment, was as follows:

> Defendant claims that it terminated [p]laintiff's employment in December 2008 because her "position was lawfully eliminated in an economic downsizing and she volunteered to work from home two days per week."  The record, however, establishes that [d]efendant's proffered reason for terminating [p]laintiff's employment at that time was a pretext.
>
> The evidence establishes that Stettin's, and in particular Bradbury's, group performed well in 2008. Bradbury testified his group was in the midst of 25% growth, and that his own analysis of the financials did not reveal the need for cost cutting measures.  Moreover, the only cost cutting measure taken at the time by [d]efendant was terminating [p]laintiff's employment. Indeed, no one else in Stettin's group was involuntarily terminated at that time.  This alone evidences that the proffered reason was a pretext.
>
> In addition, the evidence also shows that by 2008 Medco had "bundled" Rational IQ with Rational Med (because Bhandari failed to launch Rational IQ on its own).  Plaintiff had conducted trainings on both products, and was one of the most knowledgeable employees on both Rational IQ and Rational Med, making her more (not less) valuable at that time.
>
> A jury could also conclude that [d]efendant's proffered reason was a pretext based on the false and misleading claims it presented concerning the termination decision.  In its [Statement of Material Facts], [d]efendant claims falsely that Accetta made the decision to terminate [p]laintiff's employment, although Accetta testified that she did no such thing.  In its [Statement of Material Facts], [d]efendant also claims misleadingly that Bradbury and Accetta proposed that Stettin eliminate Patricia Mazzone's position, when the record actually establishes that Mazzone—who reported directly to Stettin, not to Bradbury—voluntarily resigned because,

would be found to have waived these arguments. *See In Touch Concepts, Inc. v. Cellco P'ship*, No. 13 Civ. 1419(PKC), 2013 WL 6182949, at *2 (S.D.N.Y. Nov. 18, 2013) ("The Court need not consider arguments raised for the first time on a motion for reconsideration and such arguments are generally considered waived." (citing *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d Cir. 2003))); *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Nonetheless, the court will consider the acts now claimed by plaintiff to raise questions as to whether defendant's downsizing reason for plaintiff's termination was a pretext. *See Color Tile*, 322 F.3d at 159 (holding that the "'waiver' rule, is 'one of prudence,'" and thus "not jurisdictional" (quoting *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000))).

Plaintiff's position is that "[t]he law allows the jury to consider each, and all, of these 'other-acts' in determining whether [d]efendant's proffered reason for termination was a pretext." Pl.'s Br. 5. Plaintiff is correct that other acts of a defendant, such as these, can provide evidence of pretext. *See Zann Kwan*, 737 F.3d at 847 ("[A] plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at [the pretext] stage." (citations omitted)). Although there is evidence on the record tending to show that plaintiff's position was eliminated in an economic downsizing, some or all of the evidence plaintiff points to—Meyers's reassignment, Bhandari's report, and Medco's demand for the return of plaintiff's bonus—could be found by a reasonable jury to show that, absent a desire to retaliate against

---

according to Stettin, "she was nearing retirement and was ready. . . ." Mazzone was the only woman who reported directly to Dr. Stettin.

Pl.'s Opp. to Def.'s Summ. J. Mot. 19–20 (ECF Dkt. No. 49) (footnote omitted) (citations omitted).

Meyers for complaining to a Medco Human Resources Representative, Tara Wolckenhauer ("Wolckenhauer"), about Bhandari's gender-based mistreatment, Medco would not have terminated plaintiff's employment. That is, these acts by Medco could be found by a reasonable jury to be evidence that, although economic downsizing may have been *a* reason for Meyers's termination, but for defendant's desire to retaliate against her for her complaints about gender discrimination, plaintiff would have kept her job. Here, a reasonable juror could infer, from at least some of the evidence plaintiff points to, that Medco's claimed reason for terminating plaintiff (i.e. economic downsizing) was pretextual.

Importantly, with regard to the temporal gap between plaintiff's protected activity and the adverse employment action, the court stated in *Meyers I* that "a reasonable jury could conclude that the temporal gap between . . . plaintiff's complaints about Bhandari and her termination[15] was attributable to Medco's desire that plaintiff continue to cooperate in the IMS Lawsuit." *See Meyers I*, 2012 WL 4747173, at *9. Thus, the court concluded in *Meyers I* that

> [w]ere a jury to determine that this temporal gap was attributable to Medco's desire to obtain Meyers' cooperation in the IMS Lawsuit, it would negate any effort by defendant to defeat plaintiff's claims based on a gap in time between plaintiff's protected activity and her termination. Whether this gap in time evinces that the termination was not in response to Meyers' protected activity [(i.e., complaining to Wolckenhauer about Bhandari's treatment of her)], or the need to keep her engaged in the IMS Lawsuit, is a question for a jury.

*Id.* Therefore, because the lapse in time between plaintiff's alleged complaints to Wolckenhauer and her ultimate termination could be found by a jury to be the result of Medco's need to keep Meyers involved in the IMS Lawsuit, it does not detract from plaintiff's proffered evidence of pretext.

---

[15]    While plaintiff's complaint and reassignment occurred closely in time in October 2007, her termination occurred over a year later, in January 2009. *See* Pl.'s Stmt. Pursuant to Local Civil Rule 56.1 ¶¶ 29, 30, 91 (ECF Dkt. No. 50); Meyers Dep. 267:11–269:12.

### A.  Plaintiff's Reassignment

Plaintiff's reassignment could provide some evidence that, but for Medco's desire to retaliate against her, she would not have been fired.  In other words, plaintiff's reassignment could be found by a jury to be some evidence that Medco wished to retaliate against Meyers for her complaints and did so by reassigning her.  Because the reassignment could be found to be evidence of a desire to retaliate, it could serve as evidence that retaliation was a "but-for" cause of her termination (i.e., that Medco's downsizing reason was pretextual).  As noted previously, "a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at [the pretext] stage." *See Zann Kwan*, 737 F.3d at 847 (citations omitted).  This "other evidence" can include evidence of acts that a jury could find to be retaliatory, such as plaintiff's reassignment.

The record contains evidence from which a reasonable jury could find that plaintiff complained to human resources that Bhandari was treating her differently from her co-workers—and negatively—on account of her gender, and also that, shortly thereafter, plaintiff was removed from Bhandari's group and reassigned to Accetta's group.[16]  In his deposition, Stettin even explains that "[Meyers] had a sticky situation with the relationship between [her] and [Bhandari]. And we needed someplace for [Meyers] to be that wasn't reporting to [Bhandari]." *See* Dep. of

---

[16]    According to Meyers, in October 2007, she told a Medco Human Resources Representative (Wolckenhauer) in a performance review that she thought Bhandari dealt with her differently because she was a woman, complaining specifically that he was disrespectful to her in front of her coworkers and that he had excluded her from meetings to which he had invited her male colleagues. Meyers Dep. 156:1–3; Pl.'s Stmt. Pursuant to Local Civil Rule 56.1 ¶ 29. Later that same month, Bhandari removed plaintiff from his group and, upon contacting Bhandari's supervisor, Meyers was assured that she had not been fired and instructed that she should report to another Senior Director, Accetta. Def.'s 56.1 Stmt. ¶¶ 54, 55, 59–60; Meyers Dep. 192:24–193:5, 194:1–195:6, 196:18–197:24, 216:14–217:18; Accetta Dep. 37:14–37:22.

Stettin, Affirmation of David Marek, Ex. 3, 143:8–143:11 (ECF Dkt. No. 52-3) ("Stettin Dep. II"). Moreover, after being removed from Bhandari's group, Meyers was placed in Accetta's group in a position for which she was allegedly overqualified and may have been kept there until her termination solely for her continued involvement in the IMS lawsuit.

Here, a jury could reasonably find that these facts show that plaintiff's reassignment was in retaliation for Meyers's complaints to Wolckenhauer that Bhandari was mistreating her on account of her gender. A reasonable jury could conclude that this evidence of a retaliatory act showed Medco's intent to retaliate against Meyers and that it did so by terminating her. Moreover, a reasonable jury could find that but for this retaliatory motive Meyers would have kept her job and thus, that the downsizing reason proffered by Medco was pretextual. *See Zann Kwan*, 737 F.3d at 846 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action [and] [f]rom such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." (citations omitted)). Further, because there are facts in dispute and because "[a] jury might credit all of this proffered evidence, some of it, or none at all," the question of pretext is one that should be "left for the jury to decide at trial." *See Kirkland*, 760 F.3d at 227 (quoting *Rivera*, 743 F.3d at 21) (internal quotation marks omitted).

### B. Bhandari's Report

Bhandari's report (or "review") could also provide some evidence that but for Medco's desire to retaliate against her, she would not have ultimately been fired. The report was written by Bhandari and sent to Accetta, Wolckenhauer, and Bradbury in November 2007 in order to

document plaintiff's "performance in [her] role in [Bhandari's] department." *See* Stettin Dep. II

144:16–144:19; Dep. of. Bhandari, Affirmation of David Marek, Ex. 4, 211:1–211:15 (ECF Dkt.

No. 52-4) ("Bhandari Dep."); Bhandari's Report, Affirmation of David Marek, Ex. 10 (ECF Dkt.

No. 52-10) ("Bhandari's Report"). Notably, the report was sent *after* plaintiff's October 2007

complaint to Wolckenhauer. *See* Bhandari's Report. Bhandari testified that Stettin told him "to

write down [his] reasons as to why [he] th[ought Meyers was] not fit for the job." Bhandari Dep.

106:8–106:11. The report sets forth Bhandari's reasons for believing that Meyers did not merit a

particular promotion and recommends that Meyers be informed if "she ha[d] come as far as she

[could] at Medco." *See* Bhandari's Report. While Bhandari wrote in the report that he did "not

recommend that Medco fire [Meyers] as she [was] very bright and also a very hard worker," he

also wrote that Meyers

> did not seem to grasp facts that were salient to the market situations [they] were
> facing [and t]hat inability made it impossible for her to evolve appropriate strategy
> or tactics in a market development role. . . .
> . . . .
>      The main drawback of having a person who cannot assimilate market
> feedback be responsible for evolving and executing market strategy is that
> resources are misdirected and wasted, as such a person does not appreciate what is
> important and what is not. It also makes her difficult to work with for those who
> do understand the significance of the market feedback. Consequently, I could not
> allow this situation to continue from the standpoint of Rational IQ. Also, while I
> appreciated Amy's work ethic and her contributions to Rational IQs initial strategy,
> I could not recommend her as a top performer, a pre-requisite for promotion. In
> fairness to her and to the rest of my team, I had to tell her that I did not have a place
> for her in my department.
>      If [Meyers] was doing work that involved just formulating strategy instead
> of executing and evolving strategy, she would be a good contributor. She was one
> while we were formulating the initial strategy for Rational IQ. However, once we
> were past that point, she was not a good fit.

Bhandari's Report.

Subsequent to Bhandari's report, Accetta put together a "year-end review" of plaintiff's

performance as a senior director of business planning and development for 2007. *See* Year End

Review, Affirmation of David Marek, Ex. 17 (ECF Dkt. No. 52-17) ("Accetta's Year-End Review"). Accetta's review contains abundant positive comments about plaintiff's work, including that she "displays exceptional abilities to develop strategy," "was valued as the subject matter expert of the team," and "displayed leadership traits appropriate to the situation." *See* Accetta's Year-End Review. According to Accetta's review, plaintiff's "business acumen [was] exceptional," her contributions were "substantial," and she "demonstrate[d] highly sophisticated strategy skills." Accetta's Year-End Review.

Were a jury to compare Bhandari's critical report with Accetta's seemingly entirely positive year-end review and determine that Bhandari's review—circulated to Accetta, Bradbury, and Wolckenhauer—was false, or "falsely negative" as plaintiff claims, Bhandari's report could be another weakness, or inconsistency, in Medco's explanation for plaintiff's termination. *See* Pl.'s Br. 9. That is, a jury may conclude that Bhandari's report is negative, or falsely negative, and that the timing of the report, shortly after plaintiff's complaints about Bhandari's gender-based mistreatment and her removal from his group, and shortly before Accetta's glowing year-end review, is evidence of a retaliatory motive for either or both the negative report and the removal of plaintiff from his group. Such evidence may lead a reasonable jury to conclude that, in subsequently terminating plaintiff, Medco indeed wished to retaliate against Meyers and that, but for this wish to retaliate, she would not have been terminated. *See Zann Kwan*, 737 F.3d at 846. Thus, a reasonable jury could conclude from Bhandari's report, read in conjunction with Accetta's year-end review and plaintiff's removal from his group, and considering that Medco may have kept plaintiff on simply for her involvement in the IMS Lawsuit, that Medco's explanation—a larger cost-cutting scheme—was a pretext for retaliation.

### C. Medco's Demand for the Return of Plaintiff's Bonus

With respect to the demand for the return of plaintiff's bonus, as shall be seen, the demand provides the basis for a separate retaliation claim that survives summary judgment. In addition, the demand could be considered by a jury when deciding whether Medco sought, by terminating Meyers, to retaliate against her for complaining to Wolckenhauer about Bhandari's treatment of her in October 2007. That is, Medco's March 26, 2009 demand for the return of plaintiff's bonus could be found to have been made in retaliation for plaintiff's October 2007 complaint to Wolckenhauer, her February 25, 2009 EEOC charge, or both.

As noted previously, there is evidence on the record that, when Medco terminated plaintiff's employment in January 2009, it promised to pay her a bonus if, according to Medco, plaintiff signed a Release of Claims. Moreover, as shall be seen, construing the evidence in the light most favorable to plaintiff, a reasonable jury could find that this bonus was based on merit and that Medco bonuses are not typically included in severance pay or subject to the signing of a Release of Claims. Thus, a reasonable jury could find that, by making the payment of plaintiff's earned bonus contingent on her signing the Release of Claims when bonuses are not typically subject to the signing of such a release, Medco intended to silence Meyers (i.e., stop her from pursuing a discrimination claim based on her previous complaint to Wolckenhauer) and to thereby further retaliate against her for complaining to Wolckenhauer in the first place.

Medco claims that Meyers is not entitled to the bonus because it was part of severance pay, subject to the signing of a Release of Claims, and paid to her in error. This claim—that Medco paid the bonus in error—is another way of Medco saying that it never really intended to pay Meyers the bonus, unless, of course, she signed the Release of Claims, discharging the company of liability with respect to, among other things, Bhandari's alleged mistreatment of her,

21

which was the subject of her original complaint to Wolckenhauer.  A reasonable jury could find that, in addition to retaliating against Meyers by placing a condition on the payment of her earned bonus, by demanding its return and arguing that plaintiff is not entitled to it, Medco was actually attempting to follow through on its original impermissible retaliatory act of withholding plaintiff's earned bonus, that was not actually included in severance pay or subject to the signing of a Release of Claims, unless and until she signed such a release.

Thus, a reasonable jury could find that, in making the payment of plaintiff's bonus contingent on her signing a Release of Claims and then subsequently demanding repayment of the bonus because she did not sign such a release, Medco indeed wished to retaliate against Meyers for her complaint to Wolckenhauer and that, but for this wish to retaliate, she would not have been terminated. *See Zann Kwan*, 737 F.3d at 846.  Therefore, the demand could be found by a reasonable jury to be evidence that Medco's proffered reason for her termination was a pretext.

### D. Conclusion

As *Zann Kwan* has held, evidence used by a plaintiff to make a prima facie case of retaliation can also be probative as to whether the reason proffered for a retaliatory act was pretextual. *See id.* at 847 ("[A] plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at [the pretext] stage." (citations omitted)).  When viewed as a possible further act of retaliation or as inconsistent with Medco's proffered legitimate reason for terminating Meyers, each of the above-discussed events could tend to show that the downsizing explanation for Meyers's termination was a pretext and that retaliation was

the true reason. In other words, a reasonable jury could conclude, based on this evidence, that, but for Medco's desire to retaliate against Meyers for complaining to Wolckenhauer, she would not have been terminated.

## III.    THE DEMAND FOR REPAYMENT OF PLAINTIFF'S BONUS AS AN INDEPENDENT BASIS OF A CLAIM FOR RETALIATION UNDER THE NJLAD AND TITLE VII

Plaintiff contends that the court overlooked her allegations contained in Counts Two, Four, and Six of the Third Amended Complaint to the extent that she claims therein that, in addition to retaliating against her by terminating her employment, defendant also retaliated against her by demanding the return of her 2008 bonus. Plaintiff is correct that the court's opinion in *Meyers I* did not expressly address the demand for repayment of the bonus as a stand-alone basis for a retaliation claim. Accordingly, the court will now examine the merits of summary judgment as to plaintiff's claims in Counts Two and Six that the demand for the return of her bonus was a separate act of retaliation.

### A. Count Four

As previously discussed, the NYSHRL does not apply to plaintiff's claims for the reasons set forth in the court's October 4, 2012 Opinion and Order. Accordingly, plaintiff's claims of retaliation based on the NYSHRL alleged in Count Four of the Third Amended Complaint, including the claim that centers on defendant's demand for repayment of the bonus, fail as a matter of law.

23

## B. Counts Two and Six

Counts Two and Six of the Third Amended Complaint allege retaliation under the NJLAD and Title VII, respectively. Each Count includes a claim of retaliation that is based on plaintiff's termination and another, separate claim of retaliation that is based on defendant's demand for the return of plaintiff's 2008 bonus.[17] As noted above and in *Meyers I*, at summary judgment these claims are subject to the *McDonnell Douglas* burden-shifting framework. *See Jute*, 420 F.3d at 173; *Battaglia*, 70 A.3d at 619. Because plaintiff has established a prima facie case of retaliation and there is sufficient evidence of pretext on the record, defendant's motion for summary judgment is denied with respect to both claims.

### 1. *Plaintiff Has Established a Prima Facie Case of Retaliation*

Under *McDonnell Douglas*, to overcome Medco's motion for summary judgment, Meyers must first establish a prima facie case of retaliation by showing that (1) she participated in a protected activity (2) that was known to the defendant; (3) she was subject to an adverse employment action; and (4) there was "a causal connection between the protected activity and the adverse employment action."[18] *Jute*, 420 F.3d at 173 (quoting *McMenemy*, 241 F.3d at 282–83) (internal quotation marks omitted); *Battaglia*, 70 A.3d at 619 (citing *Woods–Pirozzi*, 675

---

[17]    In her original summary judgment brief, plaintiff argues "that [d]efendant retaliated against [her] when [Medco] demanded that she return her 2008 bonus weeks (or days) after she filed her EEOC Charge in violation of the NJLAD . . . and Title VII." Pl.'s Opp. To Def.'s Summ. J. Mot. 20 (ECF Dkt. No. 49).

[18]    "In addition, in order to recover for [NJLAD] retaliation, plaintiff must also demonstrate that the original complaint was both reasonable and made in good faith." *Battaglia*, 70 A.3d at 619 (citing *Carmona v. Resorts Int'l Hotel, Inc.*, 915 A.2d 518, 521 (N.J. 2007)).

A.2d at 695). "[T]he prima facie case requires only a *de minimis* showing." *Zann Kwan*, 737

F.3d at 845. The court finds that plaintiff has established a prima facie case of retaliation.

>    *i.   Plaintiff Participated in a Protected Activity that Was Known to Defendant*

It is clear that plaintiff participated in a protected activity when she filed her EEOC

charge against Medco. *See, e.g., Jute*, 420 F.3d at 171 ("As for [the plaintiff's] further

involvement in protected activity, the district court noted that . . . it would have been unlawful to

retaliate against [the plaintiff] because she had filed charges with the . . . EEOC." (citing *Jute v.

Hamilton Sunstrand Corp.*, 321 F. Supp. 2d 408, 416 (D. Conn. 2004))); *Cosgrove v. Sears,

Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993) ("[W]e are persuaded that [the plaintiff] has

made a *prima facie* showing that [her employer] discharged her—retaliated—because she

engaged in a protected activity—i.e., because she filed an EEOC [charge] against [her

employer]."). Moreover, defendant knew about plaintiff's participation in the protected activity

in February 2009. *See* Dep. of Kelly Webber, Affirmation of David Marek, Ex. 9, 24:23–25:5

(ECF Dkt. No. 52-9) ("Webber Dep."); Pl.'s Stmt. Pursuant to Local Civil Rule 56.1 ¶ 103 (ECF

Dkt. No. 50); Def.'s 56.1 Stmt. ¶ 104; *see also Zann Kwan*, 737 F.3d at 844 ("[F]or purposes of a

prima facie case, a plaintiff may rely on 'general corporate knowledge' of her protected activity

to establish the knowledge prong of the prima facie case." (quoting *Gordon v. N.Y.C. Bd. of

Educ.*, 232 F.3d 111, 116 (2d Cir. 2000))).

>    *ii.   The Demand for the Return of the Bonus Constitutes an Adverse Employment
>          Action*

For plaintiff to demonstrate that she was subject to an adverse employment action, she

"must show that a reasonable employee would have found the challenged action materially

adverse, 'which in this context means it well might have dissuaded a reasonable worker from making *or supporting a charge of discrimination*.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (emphasis added) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted).  Defendant contends that "Medco's mere demand for [the] return of the erroneously-paid bonus is not a materially adverse act" because "[t]he demand itself did not harm [p]laintiff, as [p]laintiff remains in possession of the erroneously-paid bonus."  *See* Reply Br. in Further Supp. of Def.'s Mot. for Summ. J. 13 (ECF Dkt. No. 57) ("Def.'s Summ. J. Reply").  Under the *Burlington Northern* standard, however, the test is whether the demand "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern*, 548 U.S. at 68 (quoting *Rochon*, 438 F.3d at 1219) (internal quotation marks omitted).  Here, a reasonable jury might find that it would, and thus, that plaintiff was subject to an adverse employment action as a result of defendant's demand for the return of her bonus.

The court finds that knowledge on the part of a reasonable employee that filing an EEOC charge could result in his or her employer demanding the return of a bonus that had already been received is "likely 'to deter [a] victim[] of discrimination from complaining to the EEOC,' the courts, and [his or her] employer[]."  *See Burlington Northern*, 548 U.S. at 68 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)).  In addition, the demand made after the EEOC charge could be found to be an attempt to force Meyers to withdraw the EEOC charge and thus an effort to keep her from supporting her claim of discrimination.  Moreover, the demand, if indeed proved to have been caused by the filing of plaintiff's EEOC charge, would amount to more than a "petty slight[], minor annoyance[], [or] simple lack of good manners," but, rather, a significant adverse act that resulted in the filing of a counterclaim in this case.  *See id.*  That is, a

reasonable employee, in order to avoid litigation and potentially having to return a paid bonus, might refrain from filing, or continuing to pursue, an EEOC charge.

### iii. A Reasonable Jury Could Find a Causal Link Between the EEOC Charge and the Demand for Repayment

Meyers can establish causation "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Gordon*, 232 F.3d at 117 (citing *Cosgrove*, 9 F.3d at 1039). "When a plaintiff is relying solely on temporal proximity, the protected activity and an adverse employment action must occur 'very close' to each other." *Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 450 (S.D.N.Y. 2011) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)) (internal quotation marks omitted). Here, plaintiff alleges that "[t]he temporal proximity between [d]efendant learning that [p]laintiff filed an EEOC Charge of Discrimination and its letter demanding that [p]laintiff return her 2008 bonus is evidence of a causal connection." Pl.'s Opp. to Def.'s Summ. J. Mot. 22 (ECF Dkt. No. 49) ("Pl.'s Summ. J. Br."). In other words, plaintiff argues that, because the demand for repayment closely followed the filing of plaintiff's EEOC charge, a reasonable jury could find that the demand was caused by plaintiff's participation in the protected activity of filing a complaint with the EEOC. The court agrees that, because, here, the filing of the EEOC charge was followed closely by the demand for repayment, a reasonable jury could find a causal link between the two.

Defendant argues that "there is no competent evidence of any causal connection between [plaintiff's] filing of her EEOC charge on February 25, 2009 and Medco's March 26, 2009 demand for [the] return of the bonus monies paid to her in error on March 6, 2009." Def.'s Summ. J. Br. 23 (citing Def.'s 56.1 Stmt. ¶¶ 104, 108). Defendant reasons that it "is uncontroverted that Medco did not pay the bonus proceeds to [p]laintiff until *after* [p]laintiff

27

already had filed her EEOC charge" and contends that "[t]his fact alone negates any showing of causation." *See* Def.'s Summ. J. Br. 23 (citing Def.'s 56.1 Stmt. ¶¶ 105, 107). The court disagrees.

While defendant is correct that both the payment of the bonus and the demand for its return occurred after plaintiff had filed the EEOC charge, Medco's argument that this fact "negates any showing of causation" fails for several reasons.

First, defendant's causation argument ignores the fact that it is the closeness in time of the protected activity (the filing of the EEOC charge) and the subsequent adverse act (the demand for the return of the bonus) with which the law is concerned. Here, regardless of when the bonus was paid to plaintiff, the demand for its return closely followed her EEOC charge, about a month later, and, thus, there is sufficient evidence on the record from which a reasonable jury could find causation.

Second, the fact that the bonus was both paid and demanded back after the filing of plaintiff's February EEOC charge does not negate causation because there is evidence on the record that the initial decision to give Meyers the bonus and the act of entering the bonus into Medco's payment system occurred before the EEOC charge was filed. Because the bonus was specifically mentioned in the Termination Letter,[19] the decision to pay Meyers the bonus must have occurred on or before January 8, 2009, the date of the letter. According to Kelly Webber's ("Webber") deposition testimony, Meyers had forty-five days after receiving the Termination Letter to sign and return the Release of Claims in order to be entitled to receive her bonus, as Webber claims the bonus was a part of severance pay. *See* Webber Dep. 34:11–34:25. When

---

[19]     The Termination Letter, dated January 8, 2009, stated that in addition to severance pay, benefits, and outplacement benefits, Meyers would "receive a discretionary bonus of $40,000.00 for performance year 2008." *See* Termination Letter at D-0045.

plaintiff did not sign and return the bonus within forty-five days, or by February 22, a Medco employee, Christine Lowry, was supposed to manually delete plaintiff's bonus from the system. *See* Webber Dep. 43:5–43:18 ("Q: [W]hose responsibility was it to stop the payment of the bonus check for . . . Meyers before it went out? A: Christine Lowry's. Q: And what was she supposed to do to effectuate that? A: Take the bonus out of the system. . . . She would have gone into the system and entered zero for bonus. Q: And when was she supposed to do that? A: On or about February 22nd, whatever that date was you quoted previously that was the end of the 45 day period."). In other words, there is evidence that plaintiff's bonus was actually *entered* into the system at some point on or before February 22, because, according to Webber's deposition testimony, that is the date on which Christine Lowry failed to remove it from the system. This also means that, even though plaintiff was not actually paid her bonus until March 6, there is evidence that the bonus had already been entered into Medco's payment system before plaintiff filed her EEOC charge on February 25.

Third, that the bonus was paid on March 6, after plaintiff filed her EEOC charge, does not negate causation because there is evidence on the record showing that the bonus was paid on March 6 as the result of an omission—a Medco employee's failure to delete the bonus from the system—rather than an affirmative act. *See* Webber Dep. 35:2–35:7 ("[A] bonus for any employee is entered into our bonus system. And if someone should not receive that bonus, that bonus should be taken out of the system. And in this case, Christine [Lowry] should have taken the bonus out of the system and did not."); Webber Dep. 34:6–34:10 (Q: [W]hat occurred to trigger the sending out of [the bonus] check? A: [Meyers] would have been on a file of bonus payments and wrongly left on the file versus having been taken off because she did not sign her release."); Webber Dep. 41:23–42:3 ("Q: If this error occurred, why wasn't the payment made

immediately? A: Because our . . . annual bonuses are all paid at the same time. Q: Was that March 6th? A: Yes.").

Finally, Medco's argument in support of its counterclaim, that the bonus was paid in error, contradicts its causation argument. Defendant's argument against causation is simply that Medco would not have paid plaintiff a bonus on March 6, after she made the EEOC charge on February 25, only to demand it back in retaliation on March 26. In other words, defendant argues that if Medco wanted to retaliate against plaintiff for filing her EEOC charge, it would not have decided to send her bonus out in the first place after learning of her EEOC charge in February. In fact, defendant's claim that the bonus was paid to plaintiff in error hurts this argument because it is another way of saying that Medco did not intend to send the bonus to Meyers on March 6, but, rather, that it paid her by mistake. *See* Webber Dep. 33:23–34:5 ("Q: And who made the decision to pay the [bonus]? A: It was not a decision that was made. It was paid in error. Q: Well, I understand you are saying it was 'in error,' but who . . . authorized the payment to go out? A: No one. It was paid in error."); *see also* Webber Dep. 38:21–38:22 ("It's just a system glitch that allowed [the bonus] to be paid."). Thus, if it is, in fact, the case that the bonus was paid by mistake, its payment on March 6 does not "negate[] any showing of causation" as defendant claims.

The court finds that, given the evidence that the protected activity, the filing of plaintiff's EEOC charge on February 25, 2009, "was followed closely by" the alleged discriminatory treatment, the demand for repayment of the bonus on March 26, 2009, plaintiff has at least produced enough evidence of a causal connection to make out a prima facie case of retaliation. *See Gordon*, 232 F.3d at 117 (citing *Cosgrove*, 9 F.3d at 1039); *see also Zann Kwan*, 737 F.3d at 845 ("[T]he prima facie case requires only a *de minimis* showing."). That is, the court finds that

a reasonable jury could find a causal link between the EEOC charge and the demand for

repayment. Moreover, for the aforementioned reasons, the fact that the bonus was distributed

*after* Medco learned about plaintiff's EEOC charge does not necessarily negate causation.

### 2. *Defendant Has Articulated a Legitimate, Non-Retaliatory Reason for the Adverse Employment Action*

Because plaintiff has met her initial burden of establishing a prima facie case of

retaliation, the burden shifts to the defendant "to articulate a legitimate, non-retaliatory reason

for the adverse employment action." *Jute*, 420 F.3d at 173 (citing *Quinn*, 159 F.3d at 768). As

its legitimate, non-retaliatory reason for demanding repayment of the 2008 bonus, Medco alleges

that payment of the bonus, which, according to Medco, was part of plaintiff's severance package

and not "earned" by plaintiff, was "subject to the signing of a release of claims," and that,

"[b]ecause plaintiff did not sign the release, . . . she did not qualify for receipt of the bonus,"

which, Medco claims, was paid "in error." Def.'s Summ. J. Br. 24; Def.'s Summ. J. Reply 15.

While the court is not entirely convinced that it was legally permissible to condition payment of

plaintiff's bonus on the signing of the Release of Claims,[20] defendant's explanation and

supporting evidence, including the ambiguous language of the Termination Letter and Webber's

---

[20]     The court is not convinced that defendant may make the receipt of plaintiff's
bonus contingent on her signing the Release of Claims because bonuses are not normally
included in severance pay and there is evidence that this bonus specifically was not included in
"Severance Pay" under Medco's Severance Plan. Summary Plan Description at D-0069, D-
0071; *see also* Termination Letter at D-0045 ("Under the terms of the [Severance] Plan, you will
receive severance pay and benefits for a period of 20 weeks . . . and outplacement benefits for 6
months. *In addition*, you will receive a discretionary bonus of $40,000.00 for performance year
2008. . . . In order to receive *severance pay and benefits* under the Plan you must sign and return
the enclosed Release of Claims." (emphasis added)). What's more—there is evidence on the
record that plaintiff earned this particular bonus based on her performance in 2008. *See*
Termination Letter at D-0045; Webber Dep. 32:1–32:9.

deposition testimony, are sufficient at least for a reasonable jury to find that Medco has articulated a legitimate, non-retaliatory reason for demanding repayment of plaintiff's bonus.

### 3. Plaintiff Has Produced Sufficient Evidence of Pretext for Her Claims to Survive Summary Judgment

Finally, because defendant has offered a legitimate, non-retaliatory reason for demanding the return of plaintiff's bonus, plaintiff must produce evidence of pretext. *See Zann Kwan*, 737 F.3d at 845 (citing *Weinstock*, 224 F.3d at 42).[21] To show that an employer's explanation is a pretext for retaliation, an "employee's admissible evidence must show 'that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Kirkland*, 760 F.3d at 225 (quoting *Zann Kwan*, 737 F.3d at 845). In other words, the plaintiff "must show that retaliation was a 'but-for' cause of the adverse action," which "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan*, 737 F.3d at 845–46 (citing *Nassar*, 133 S. Ct. at 2526, 2533); *see also Bell v. Lockheed Martin Corp.*, Civil No. 08–6292 (RBK/AMD), 2014 WL 2920503, at \*5, \*7 (D.N.J. June 27, 2014) (noting that "New Jersey courts 'have frequently looked to case law under Title VII . . . for guidance in developing standards to govern the resolution of [NJLAD] claims'" and citing but-for test in the context of a retaliation claim under the NJLAD (quoting *Carmona v. Resorts Int'l Hotel, Inc.*, 915 A.2d 518, 528 (N.J. 2007)) (citing *Nassar*, 133 S. Ct. at 2534)). "A

---

[21]     As explained above, under the third step of *McDonnell Douglas*, once the defendant has offered a legitimate, non-retaliatory reason for the adverse employment action, the presumption of retaliation "drops from the picture" and the burden shifts back to the plaintiff, who must then produce evidence that the non-retaliatory reason provided by the defendant "is a mere pretext for retaliation" in order for the case to continue and survive a motion for summary judgment. *See Zann Kwan*, 737 F.3d at 845 (citing *Weinstock*, 224 F.3d at 42).

plaintiff may prove that retaliation was a but-for cause of an adverse employment action" and thus, that defendant's proffered reason was a pretext, "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Zann Kwan*, 737 F.3d at 846; *see also Smith v. Hutchinson Plumbing Heating Cooling*, Docket No. L–0992–12, 2015 WL 853040, at \*8, \*9 (N.J. Super. Ct. App. Div. Mar. 2, 2015) (reversing grant of summary judgment to defendant on plaintiff's NJLAD claim for retaliatory discharge because the court was "satisfied that plaintiff mustered sufficient facts on the motion to allow a rational jury to reasonably conclude that defendant's claims about plaintiff's performance were a pretext, and that the real reason plaintiff was fired was because he complained about [his manager's] anti-Semitic conduct" where plaintiff pointed to evidence "that other sales people missed meetings and refused sales calls in Pennsylvania and were not terminated").

As evidence "that [d]efendant fabricated its proffered reason for demanding that [p]laintiff return her 2008 bonus," plaintiff points to Medco's Severance Plan and Webber's deposition testimony, and argues that Medco's claim, that plaintiff was not entitled to her bonus unless and until she signed the release of claims, is not "supported by its own documentation [or] its own internal systems." *See* Pl.'s Summ. J. Br. 23–24. According to plaintiff, the fact that the Severance Plan's written description of "Severance Pay" makes no mention of a bonus indicates that the bonus was not part of the severance payments covered by the Severance Plan and, thus, its payment was not contingent on her signing the Release of Claims. *See* Pl.'s Summ. J. Br. 23–24. Thus, for plaintiff, the language of the Summary Plan Description, and thereby the Severance Plan itself, constitutes evidence that Medco's claim, that payment of the bonus was contingent on plaintiff signing the Release of Claims, is false, and therefore, a pretext. *See* Pl.'s

Summ. J. Br. 23–24. In fact, based on the Summary Plan Description, it appears that bonuses are

not covered by the Severance Plan as severance pay, outplacement benefits, or severance

benefits. *See* Summary Plan Description at D-0053, D-0062, D-0063, D-0069, D-0071.

Moreover, an examination of the Summary Plan Description reveals that bonuses are specifically

excluded from "Annual compensation," which is used in the determination of "Severance Pay"

under the plan. *See* Summary Plan Description D-0053, D-0062, D-0069, D-0071 (providing

examples of "Severance Pay" in terms of "Weeks of Pay," where "Week of Pay" is defined as

"Annual Compensation divided by 52" and "Annual [C]ompensation . . . *exclud*[*es*] *amounts*

*such as bonuses*" (emphasis added)). Additionally, plaintiff states that she earned her bonus and

that Webber's testimony supports that fact. *See* Pl.'s Summ. J. Br. 23–24 ("Webber testified that

[p]laintiff was eligible for her 2008 bonus only because her manager indicated she performed

well, and that Medco paid 2008 bonuses to severed employees who worked the full year (like

[p]laintiff) because they had earned that bonus."); *see also* Webber Dep. 32:1–32:9.

Defendant contends that "[t]here is no competent evidence in the record from which a

reasonable jury could find [that] Medco's articulated reasons for [its] legitimate business

decisions are pretext for retaliation." Def.'s Summ. J. Br. 24. In support of its argument,

defendant correctly states that "mere temporal proximity, though sufficient to establish a *prima*

*facie* case of retaliation, is legally insufficient to avoid summary judgment at the pretext stage of

the analysis." Def.'s Summ. J. Br. 24 (citing *Galimore v. City Univ. of N.Y. Bronx Cmty. Coll.*,

641 F. Supp. 2d 269, 289 (S.D.N.Y. 2009)). Here, however, plaintiff has presented evidence of

more than mere temporal proximity. Plaintiff has presented both evidence of temporal proximity

and evidence from which a reasonable jury could find that defendant's proffered reason is false,

i.e., that the "bonus" was not included in Medco's severance plan and was earned by plaintiff

based on merit. *See Zann Kwan*, 737 F.3d at 847 ("[A] plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at [the pretext] stage." (citations omitted)). If, as plaintiff claims, and, according to Webber's testimony—which the court construes in a light most favorable to Meyers—plaintiff earned her bonus based on merit, then (1) Medco's proffered legitimate reason for demanding repayment of the bonus (that it was part of Medco's severance package to which plaintiff was not entitled because she did not sign the Release of Claims) was false because (2) the payment of the bonus would have been in exchange for her past performance and not in exchange for her signing the Release of Claims.

The court finds that the ambiguous language of the Termination Letter, the apparent exclusion of bonuses from the description of "Severance Pay" in the Summary Plan Description, and the portions of Webber's testimony implying that plaintiff had earned her bonus, together constitute evidence from which a reasonable jury could find that defendant's articulated reason for demanding the return of the bonus was a pretext for retaliation. This is because these weaknesses, inconsistencies, and contradictions in defendant's explanation constitute evidence from which a reasonable jury could find that, but for Medco's desire to retaliate against plaintiff for filing her EEOC charge, it would not have demanded the return of her bonus. *See Zann Kwan*, 737 F.3d at 846 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." (citations omitted)). Moreover, this evidence, together with the evidence that the demand for repayment of the bonus closely followed plaintiff's EEOC charge, is sufficient

evidence of pretext to defeat defendant's motion for summary judgment with respect to

plaintiff's remaining retaliation claims. *See Zann Kwan*, 737 F.3d at 847 ("[A] plaintiff may rely

on evidence comprising her prima facie case, including temporal proximity, together with other

evidence such as inconsistent employer explanations, to defeat summary judgment at [the

pretext] stage.").

## CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration is GRANTED with

respect to her retaliation claims in Counts Two and Six of the Third Amended Complaint and

DENIED with respect to her other claims.  On reconsideration, defendant's motion for summary

judgment is DENIED with respect to plaintiff's claims for retaliation in Counts Two and Six and,

accordingly, those claims are reinstated.


It is SO ORDERED.


Dated: March 31, 2015
       New York, New York


                                                     /s/            Richard K. Eaton
                                                     _____
                                                                 Richard K. Eaton, Judge